FILED
IN CLERKS OFFICE
2017 NOV -3 PM 2: 15
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) | Criminal No. 17-10346DPW |
| v. | ) ) ) | Wire Fraud (18 U.S.C. § 1343) |
| YASUNA J. MURAKAMI, | ) ) | |
| Defendant. | ) ) ) | Forfeiture (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)) |

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

1. Yasuna J. Murakami ("Murakami") was an individual living in Cambridge, Massachusetts.

2. Murakami was a managing member of MC2 Capital Management LLC ("MC2 Capital"), which was an investment advisory firm organized on or about August 17, 2007 and based in Cambridge, Massachusetts.

3. MC2 Capital was the sole managing member of two hedge funds: (i) MC2 Capital Partners LLC (the "Partners Fund") and (ii) MC2 Capital Value Partners LLC (the "Value Fund"). The Partners Fund was organized on or about August 17, 2007 and the Value Fund was organized on or about August 28, 2008.

4. Murakami was also a managing member of MC2 Canada Capital Management LLC ("MC2 Canada"), which was a separate investment advisory firm organized in approximately May 2011.

5.   MC2 Canada was the sole managing member of another hedge fund called the MC2 Capital Canadian Opportunities Fund LLC (the "Canada Fund"). The Canada Fund was organized on or about May 18, 2011.

6.   According to marketing materials provided to investors, the Canada Fund was a "long/short equity fund that allows US investors to gain exposure to Canadian equities through a fund managed by one of the top performing money managers in Canada[,]" - a Toronto-based asset management firm (the "Toronto Firm").

7.   The Canada Fund's Private Placement Memorandum indicated that its investment objective was "to mimic the investment strategy and investments of the [Toronto Firm] Capital Ideas Fund." Between 2008 and 2011, the Toronto Firm was very successful in the Canadian securities market, and specifically with its Capital Ideas Fund, which had as its objective to "exceed the annual returns of the S&P 500 or another index whose return mirrors the S&P."

8.   The Toronto Firm, however, was unable to accept direct investments of U.S. tax paying investors in its Capital Ideas Fund, so it entered into an agreement with MC2 Canada whereby the Toronto Firm was responsible for the trading of Canada Fund assets in exchange for 70 percent of the management and performance fees earned by MC2 Canada.

9.   Under the terms of the agreement with MC2 Canada, the Toronto Firm managed the Canada Fund's daily trading activity. Although the Toronto Firm was responsible for directing the trading activity for the Canada Fund, and had access to the fund's brokerage account, it was not given access to a complete list of investors, the amounts each investor had contributed to the Canada Fund, or the dates when such contributions were made.

10.   Victim Investor 1 was a family investor group.

## SCHEME TO DEFRAUD

11.   Beginning in or around May 2011, and continuing through in or around December 2016, as part of a scheme to defraud investors in the Canada Fund, Murakami solicited and obtained investments from individual and institutional investors by representing that the investment strategy and day-to-day management of investments would be handled by the highly sought-after Toronto Firm.

12.   After investors provided Murakami with assets to invest in the Canada Fund, Murakami misappropriated millions of investor dollars by fraudulently diverting the investments to business and personal bank accounts he controlled and using investor funds to make personal investments in the Canada Fund. In addition, Murakami misused Canada Fund investor assets to make payments to other individuals who had invested in his other hedge funds.

13.   For example, Victim Investor 1 was one of the largest investors in the Canada Fund. Between May 2012 and August 2013, Victim Investor 1 invested $2 million dollars in the Canada Fund. Victim Investor 1 was interested in investing directly with the Toronto Firm but was unable to do so because the Toronto Firm could not accept investments from U.S. tax-paying investors.

14.   After the Canada Fund launched, Victim Investor 1 was directed to Murakami and MC2 Canada in order to invest and have access to the Toronto Firm's trading strategy in Canadian equities. Had it not been for MC2 Canada's relationship with the Toronto Firm, Victim Investor 1 would not have invested with Murakami.

15.   On or about May 15, 2012, Victim Investor 1 made its first investment of $1 million in the Canada Fund. As part of the scheme to defraud, Murakami misappropriated Victim Investors 1's entire initial investment. Victim Investor 1 made its initial investment by

wire transfer from its JP Morgan Chase bank account in New York to Bank of America ("BOA") account -2416, which was opened in Massachusetts in the name of the Canada Fund. Murakami had signatory authority and access to BOA account -2416.

16. After receiving Victim Investor 1's initial investment, Murakami immediately transferred $880,000 from BOA account -2416 to BOA account -0215, which was maintained in the name of MC2 Capital. Murakami then transferred the remainder of Victim Investor 1's initial investment ($120,000) to BOA account -3926, which was maintained in the name of the Value Fund. Murakami had signatory authority and access to BOA accounts -0215 (MC2 Capital) and -3926 (Value Fund).

17. On or about May 17, 2012, Murakami deposited a $750,000 check written on the MC2 Capital BOA account -0215 into the Canada Fund's brokerage account, which was maintained at JP Morgan Securities. Murakami however registered $650,000 of the $750,000 as if the investment had been made by Murakami personally rather than by Victim Investor 1.

18. Murakami also transferred almost the entire $120,000 of Victim Investor 1's funds that he had previously placed in BOA account -3926 to other personal bank accounts or accounts he controlled.

19. Victim Investor 1 made a second $1 million investment in the Canada Fund on or about August 23, 2013.

20. Just as with Victim Investor 1's initial contribution, Murakami misappropriated the entire amount by transferring $700,000 of the investment to the MC2 Capital BOA account -0215, and $300,000 to the Value Fund BOA account -3926.

21. Murakami then invested approximately $200,000 of the $700,000 in the Canada Fund and attributed the investment to other investors rather than to Victim Investor 1.

10

22. As part of the scheme to defraud, Murakami also misused Canada Fund investor assets to satisfy redemption requests made by investors in other hedge funds Murakami controlled. For example, Murakami used $100,000 of Victim Investor 1's second $1 million dollar contribution to the Canada Fund to pay off an investor who had previously invested in one of Murakami's other hedge funds (the Partners Fund).

23. Also as part of the scheme to defraud, and in order to prevent detection and to lull investors into believing their investments were safe, Murakami routinely provided them with documents containing false and fraudulent information regarding the investors' assets.

24. For example, on numerous occasions, Murakami provided Victim Investor 1 with Schedule K-1 tax forms, which falsely reflected investments made by Victim Investor 1 in the Canada Fund that Murakami never actually made. For instance,

   a. On or about April 14, 2013, Murakami e-mailed Victim Investor 1 a 2012 Schedule K-1 tax form. Despite the fact that Murakami had not made any investments on Victim Investor 1's behalf, the Schedule K-1 sent by Murakami falsely reflected an increase in Victim Investor 1's initial $1 million investment of approximately $77,000.

   b. On or about November 1, 2016, Murakami e-mailed Victim Investor 1 an account statement falsely indicating that Victim Investor 1's $2 million investment had grown to over $4.4 million.

## COUNT ONE
### (Wire Fraud – 18 U.S.C. § 1343)

25. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 24 of this Information, and further charges that:

26. On or about August 23, 2013, in the District of Massachusetts and elsewhere,

### YASUNA J. MURAKAMI

defendant herein, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice to defraud, to wit: causing $1,000,000 to be transferred by interstate wire transmission from Victim Investor 1's account at JP Morgan Chase Bank in New York to the Canada Fund Bank of America account ending in -2416 in Massachusetts.

All in violation of 18 U.S.C. § 1343.

## FORFEITURE ALLEGATION
## (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

27. Upon conviction of the offense charged in Count One,

**YASUNA J. MURAKAMI**

defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense.

28. If any of the property described in the above paragraph as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant –

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction or the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(C), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in the above paragraph, all pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

WILLIAM D. WEINREB
Acting United States Attorney

Dated: 11/3/2017

By: _____
JORDI DE LLANO
Assistant United States Attorney