# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YASUNA MURAKAMI,<br><br>Defendant. | Case No. 17-CR-10346-DPW |

**DEFENDANT YASUNA MURAKAMI'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR COMPASSIONATE RELEASE FROM INCARCERATION**

The government does not dispute that MDC Brooklyn has woefully inadequate medical resources to treat inmates who contract COVID-19 (*e.g.*, the facility lacks an adequate number of test kits and there are only three doctors at the facility, none of whom specializes in infectious diseases), nor does it dispute that the communal nature of prison subjects Mr. Murakami to increased risk of contracting the virus. Instead, it asks this Court to simply trust that the BOP has the pandemic under control. *See* Opp. at 10-11. However, the government's assurances ring hollow when the MDC Brooklyn warden placed Mr. Murakami on a list of prisoners most at risk from the virus. The BOP has already failed to prevent the exponential transmission of COVID-19 in its facilities. *See United States v. Rodriguez*, No. 03-cr-00271-AB, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("The government's assurances that the BOP's 'extraordinary actions' can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease at the facility where [the defendant] is housed."). In just one week, the number of inmates testing positive for the virus has increased from 57 to 241—a 400% increase in just seven days. The rate of infection has similarly exponentially increased among

staff members at BOP facilities, who have substantially greater ability than inmates to take preventative measures to avoid contracting COVID-19. Most concerningly, the BOP acknowledges that eight inmates have died from COVID-19 since March 28, 2020. Assuming a relatively high fatality rate (2%) among inmates who are infected, eight deaths suggests that there are many more inmates who have COVID-19 than have tested positive.

BOP-Reported Positive Tests for COVID-19 Nationwide[1]

| Date | Number of Positive Inmates | Number of Positive Staff | Number of Inmate Deaths |
|---|---|---|---|
| 3/21/2020 | 1 | 2 | 0 |
| 3/22/2020 | 1 | 2 | 0 |
| 3/23/2020 | 3 | 3 | 0 |
| 3/24/2020 | 6 | 3 | 0 |
| 3/25/2020 | 6 | 3 | 0 |
| 3/26/2020 | 10 | 8 | 0 |
| 3/27/2020 | 14 | 13 | 0 |
| 3/28/2020 | 19 | 19 | 1 |
| 3/29/2020 | 19 | 19 | 1 |
| 3/30/2020 | 28 | 24 | 1 |
| 3/31/2020 | 29 | 30 | 1 |
| 4/1/2020 | 57 | 37 | 3 |
| 4/2/2020 | 75 | 39 | 6 |
| 4/3/2020 | 91 | 50 | 7 |
| 4/4/2020 | 120 | 54 | 8 |
| 4/5/2020 | 138 | 59 | 8 |
| 4/6/2020 | 196 | 63 | 8 |
| 4/7/2020 | 241 | 72 | 8 |

The Department of Justice has acknowledged that it is impossible to protect inmates from COVID-19, and Attorney General William Barr has found "that emergency conditions are materially affecting the functioning of the Bureau of Prisons." The Attorney General directed the BOP to

---

[1] Numbers obtained from www.bop.gov/coronavirus on a daily basis. This chart likely understates significantly the actual number of inmates who have tested positive. BOP does not provide any information on its website as to how many tests have actually been administered.

"review all inmates who have COVID-19 risk factors, as established by the CDC," starting with inmates incarcerated at FCI Oakdale, FCI Danbury, and FCI Elkton—the facilities where there has been the greatest number of inmate deaths so far. However, this review will come too late for those inmates who have already perished from the virus, and many more inmates will likely die at those and other facilities before the BOP completes its review.

A majority of courts agree that district courts are no longer bound by the policy statement of the United States Sentencing Guidelines § 1B1.13 (Application Notes). The policy statement, which predates the First Step Act, are now "clearly outdated." *See Rodriguez*, 2020 WL 1627331, at \*3-\*6 (collecting cases). In the absence of an updated policy statement from the Sentencing Commission, Courts are authorized to determine whether extraordinary circumstances exist warranting relief. *See id.* at \*6.

There is sufficient evidence of Mr. Murakami's medical condition to warrant compassionate release now, *before* he contracts the potentially deadly virus. It was the BOP, not Mr. Murakami, that first identified him as a medically vulnerable inmate, including him on a list of 537 inmates at MDC Brooklyn who meet the CDC definition of "medically vulnerable." The BOP has access to Mr. Murakami's current medical records and there is no reason to dispute its determination that Mr. Murakami is at increased risk from the virus. Mr. Murakami's medical conditions are also confirmed by the PSR, which was prepared by Probation (with access to Mr. Murakami's pre-detention medical records) long before the COVID-19 pandemic. The government acknowledges that it has been unable to obtain Mr. Murakami's medical records from the BOP; it is misguided to believe that Mr. Murakami or his counsel would have more success. To wait for medical records confirming what the BOP has already said would only add unnecessary bureaucratic delay in the middle of an emergency.

Finally, the government's contention that administrative exhaustion is required under the circumstances we face today ignores the growing chorus of decisions that have found exhaustion to be futile *now*. *See*, *e.g.*, *United States v. Zukerman*, 16-cr-194-AT (Dkt. No. 116) (S.D.N.Y. Apr. 3, 2020) (finding that excusing exhaustion during "rapidly advancing pandemic" furthers the purpose of the First Step Act to "increase[e] the use and transparency of compassionate release."); *United States v. Perez*, No. 17-cr-513-3-AT (Dkt. No. 98) (S.D.N.Y. Apr. 1, 2020) (waiving exhaustion requirement due to exigent circumstances of COVID-19 virus); *United States v. Colvin*, No. 19-cr-179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (same); *United States v. Powell*, No. 94-cr-316-ESH (Dkt. No. 98) (D.D.C. Mar. 28, 2020) (waiving exhaustion requirement and granting motion for compassionate release due to COVID-19). Although it is true that some courts have required exhaustion, a number of those decisions predate the first case of COVID-19 in the BOP system at MDC Brooklyn on March 21, 2020, and therefore did not consider the uniquely exigent circumstances presented today. *See* Michael Balsamo, "1st fed inmate tests positive for coronavirus," Associated Press (Mar. 21, 2020), available at https://apnews.com/ec49cc7f4d1b00bc5010dfb6d935e042; *see also, e.g.*, *Cook v. Spaulding*, 2020 WL 231464 (D. Mass. Jan. 15, 2020) (Dein, J.); *United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020). The deadly and extremely contagious virus is already present in the facility where Mr. Murakami is currently living in close proximity with large numbers of inmates. The BOP has identified Mr. Murakami as more vulnerable than most, and yet the BOP has not released him. It would be Kafkaesque to require Mr. Murakami to wait for his request to meander its way through the federal bureaucracy while the danger he faces increases exponentially every day. Given the unprecedented emergency facing the federal prison

system, the Court should waive the exhaustion requirement and grant Mr. Murakami's motion for compassionate release.

Dated: April 7, 2020

Respectfully submitted,

YASUNA MURAKAMI

By his attorneys,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO # 669810)
Megan A. Siddall (BBO # 568979)
MINER ORKAND SIDDALL LLP
470 Atlantic Avenue, 4th Floor
Boston, Massachusetts 02210
Tel: (617) 273-8421
Fax: (617) 273-8004
sorkand@mosllp.com
msiddall@mosllp.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and accurate copy of the foregoing by ECF upon all counsel of record on April 7, 2020.

*/s/ Seth B. Orkand*
Seth B. Orkand