# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YASUNA MURAKAMI,<br><br>Defendant. | Case No. 17-CR-10346-DPW |

### DEFENDANT YASUNA MURAKAMI'S EMERGENCY MOTION FOR HEARING ON EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Defendant Yasuna Murakami respectfully moves, on an emergency basis, for a hearing on his Emergency Motion for Compassionate Release, filed on April 4, 2020. [ECF No. 60]. Since Mr. Murakami filed his motion one month ago, there has been a 2,034% increase in the number of inmates in BOP custody who have tested positive for COVID-19. Whereas there were 120 cases of the virus among the inmate population on April 4, 2020, there were 2,441 cases as of May 3, 2020.[1] Although there has also been an exponential increase in the instances of COVD-19 among BOP staff, the rate of transmission is considerably slower than among the inmate population, highlighting the particular jeopardy posed by inmate living conditions. There have now been 498 cases among BOP staff.[2] Tragically, the virus has now caused the death of 38 inmates in BOP custody.[3]

Since he filed his motion, an independent epidemiologist has inspected MDC Brooklyn,

---

[1] Of these 2,441 inmates who have tested positive, the BOP reports that 515 inmates have recovered. *See* Federal Bureau of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/ (last accessed May 3, 2020).
[2] Of these, the BOP reports that 148 staff members have recovered. *Id.*
[3] *Id.*

where Mr. Murakami is incarcerated, and has determined that its procedures are woefully inadequate to prevent the spread of COVID-19. Additionally, numerous courts have determined that the virus presents extraordinary and compelling circumstances to modify sentences to release defendants to home confinement. Mr. Murakami respectfully requests that the Court hold an emergency hearing on his motion, and modify his sentence to permit him to serve the remainder of his sentence in home confinement.

**I.      An Expert Evaluation of MDC Brooklyn on April 23 Found that the Facility Is Not Adequately Testing Inmates for COVID-19 or Protecting High-Risk Inmates**

Although there have been widespread outbreaks at other BOP facilities (*e.g.*, 620 cases at FCI Terminal Island, 445 cases at FMC Fort Worth, and 210 cases at FCI Butner), the conditions at MDC Brooklyn, where Mr. Murakami is housed, have drawn particular scrutiny. In connection with a class action filed by several inmates at MDC Brooklyn, Homer Venters, M.D., the former Chief Medical Officer for the New York City jail system, visited MDC Brooklyn on April 23, 2020, to evaluate the facility's COVID-19 response. *See Chunn et al. v. Edge*, 20-cv-01590 [ECF No. 72-1], attached hereto as Exhibit A. He visited four housing units, interviewed 17 inmates, and reviewed numerous records. *Id.* at ¶¶ 13-15. Dr. Venters informed the court that he was "alarmed" by MDC Brooklyn's "failure to implement simple procedures" recommended by the CDC "that could identify patients ill with COVID-19, prevent the spread of COVID-19 throughout the facility, and ensure that high-risk patients receive adequate care." *Id.* at ¶ 1. Of particular concern, although more than 100 inmates have submitted sick call requests for symptoms, Dr. Venters found that **MDC Brooklyn has tested only 13 inmates for COVID-19**. *Id.* at ¶ 26. Nearly half of these tests were positive for the virus. *Id.*

Dr. Venters found that the sick call system at MDC Brooklyn is "broken," resulting in inmate reports of illness not being acted upon. *Id.* at ¶ 3. It takes between three and seven days

for inmates to be examined by medical staff, if they are seen at all. *Id.* at ¶ 23. He observed that the facility has "has not implemented adequate infection control practices." *Id.* at ¶ 4. Many inmates are not screened for signs and symptoms of COVID-19. *Id.* at ¶ 18. Daily temperature checks have decreased in frequency to once every two to three days. *Id.* at ¶ 19. The facility is not checking other signs of COVID-19, such as heart rate and blood oxygenation. *Id.*

Dr. Venters reviewed sick-call forms submitted by inmates between March 133 and April 13, 2020. A total of 147 sick call requests during this period were for symptoms associated with COVID-19. *Id.* at ¶ 25. Nearly 40 inmates submitted repeated sick call requests, indicating that their first requests were never acted upon. *Id.* Several of the sick call forms were for inmates reporting COVD-19 symptoms of other inmates. *Id.*

Of particular concern for inmates, like Mr. Murakami, who have underlying health conditions that put them at greater risk of death, Dr. Venters found that "the MDC has not implemented any special procedures for . . . high-risk detainees." *Id.* at ¶ 5. Nor has the facility implemented adequate infection control practices. For example, inmates reported that they receive insufficient cleaning solutions for their cell areas. *Id.* at ¶ 42. Phones are not being cleaned, despite being used by one detainee after another. *Id.* Staff members are not wearing gloves or masks. *Id.* at ¶ 43. Inmates in the "insolation" area were provided only loose fitting surgical masks, and inmates suspected of having COVID-19 are housed in a unit with people who did not have symptoms. *Id.* at ¶ 45. In sum, Dr. Venter concluded, "Based on my physical inspection of the MDC, it is my assessment that current practices in MDC do not adequately identify and protect detainees who are particularly vulnerable to the effects of COVD-19 due to their high-risk underlying medical conditions." *Id.* at ¶ 51.

II.     **The Government's Administrative Exhaustion Argument Is Now Moot**

Mr. Murakami filed his Motion for Compassionate release on April 4, 2020, having sent

a request for compassionate release to the BOP on April 2, 2020.  The warden's office confirmed that it received his request on April 4, 2020.  *See* Email from V. Logan to Seth Orkand (Apr. 4, 2020), attached hereto as <u>Exhibit B</u>.  The compassionate release statute provides the Court authority to modify Mr. Murakami's sentence after the expiration of 30 days following the warden's receipt of his compassionate release request.  *See* 18. U.S.C. § 3582(c)(1)(A)(i).  The 30-day waiting period has now lapsed without any response from the BOP.  Therefore, it is no longer necessary for the Court to consider whether it may waive the statute's administrative exhaustion requirements, as this issue is now moot.

### III.     Extraordinary and Compelling Reasons Exist to Order Mr. Murakami's Release to Home Confinement

In the month since Mr. Murakami filed his Emergency Motion for Compassionate Release, numerous courts in this District and throughout the country have recognized the urgent need to reduce the jail population and the potentially catastrophic effects that prison outbreaks could have on both prison populations and the society at large.  These concerns have prompted a spate of rulings granting or extending the release of individuals who are detained, incarcerated, or soon scheduled to self-surrender. *See, e.g. United States v. Soto*, 2020 WL 2104787, No. 18-cr-10086-IT (D. Mass. May 1, 2020) (finding extraordinary and compelling reasons for compassionate release of inmate housed at MDC Brooklyn with hypertension); *United States v. Kelly*, 2020 WL 2104241, No. 13-cr-59-CWR-LRA-2 (S.D. Miss. May 1, 2020) (granting motion for compassionate release); *United States v. Bryant*, 2020 WL 2085471, Crim. No. 95-202-CCB-3 (D. Md. Apr. 30, 2020) (same); *United States v. Brown*, 2020 WL 2091802, No. 05-CR-00227-1 (S.D. Iowa Apr. 29, 2020) (same); *United States v. Dunlap*, 2020 WL 2062311, No. 02cr165-1 (M.D.N.C. Apr. 29, 2020) (same); *United States v. Lucas*, 2020 WL 2059735, No. 15-cr-143 (W.D.N.Y. Apr. 29, 2020) (same); *United States v. Saad*, 2020 L 2065476, No. 16-20197

(E.D. Mich. Apr. 29, 2020) (same); *United States v. Harper*, 2020 WL 2046381, No. 18-cr-00025 (W.D. Va. Apr. 28, 2020) (same); *United States v. Mei*, 2020 WL 2041675, Crim. No. TDC-18-0571 (D. Md. Apr. 28, 2020) (same); *United States v. Handy*, 2020 WL 2041666, Crim. No. PJC 04-0559 (D. Md. Apr. 28, 2020) (same); *United States v. Kesoyan*, 2020 WL 2039028, No. 15-cr-236-JAM (E.D. Cal. Apr. 28, 2020) (same); *United States v. Robinson*, 2020 WL 1982872, No. 18-cr-00597-RS-1 (N.D. Cal. Apr. 27, 2020) (same); *United States v. Thorson*, 2020 L 1978385, No. 16-cr-00017-TBR (W.D. Ky. Apr. 24, 2020) (same); *United States v. Gorai*, 2020 WL 1975372, No. 18-CR-220 JCM (CWH) (D. Nev. Apr. 24, 2020) (same); *United States v. Park*, 2020 WL 1970603, No. 16-r-473 (RA) (S.D.N.Y. Apr. 24, 2020) (same); *United States v. Coles*, 2020 WL 1976296, No. 00-cr-20051 (C.D. Ill. Apr. 24, 2020) (same); *United States v. Sanchezi*, 2020 WL 1933815, No. 18-cr-00140-VLB-11 (D. Conn. Apr. 22, 2020) (same); *United States v. Curtis*, 2020 WL 1935543, Crim. No. 03-533 (BAH) (D.D.C. Apr. 22, 2020) (same); *United States v. Bess*, 2020 WL 1940809, No. 16-cr-156 (W.D.N.Y. Apr. 22, 2020) (same); *United States v. Poulios*, 2020 WL 1922775, No. 09-cr-109 (E.D. Va. Apr. 21, 2020) (same); *United States v. Atwi*, 2020 WL 1910152, No. 19-20607 (E.D. Mich. Apr. 20, 2020) (same); *United States v. Scparta*, 2020 WL 1910481, No. 18-cr-578 (AJN) (S.D.N.Y. Apr. 20, 2020 (same); *United States v. Joling*, 2020 WL 1903280, No. 11-cr-60131-AA (D. Or. Apr. 17, 2020) (same); *United States v. Atkinson*, 2020 WL 1904585, No. 19-cr-55 JCM (CWH) (D. Nev. Apr. 17, 2020) (same); *Samy v. United States*, 2020 WL 1888842, No. 16-cr-20610-1 (E.D. Mich. Apr. 16, 2020) (same); *United States v. Cosgrove*, 2020 WL 1875509, No. CR15230-RSM (W.D. Wash. Apr. 15, 2020 (same); *United States v. Macfarlane*, No. 1:19-cr-10131-NMG, Dkt. No. 352 (D. Mass. Apr. 14, 2020) (holding that the pandemic and other factors constitute "extraordinary and compelling circumstances which warrant a reduction in [the defendant's]

sentence"); *Savino v. Hodgson*, No. 1:20-cv-10617-WGY, Dkt. Nos. 55, 73, 76, 86 (D. Mass. Apr. 7, 2020) (releasing ICE detainees due to pandemic).

In *Soto*, Judge Talwani considered a motion for compassionate release from a defendant who, like Mr. Murakami, is incarcerated at MDC Brooklyn and has hypertension. Judge Talwani reviewed a letter from the warden of the facility which indicated that as of April 9, 2020, only 11 inmates had been tested for COVID-19. *Soto*, 2020 WL 2104787, at *2. Compared with Dr. Venter's finding, it appears that **only two additional inmates at MDC Brooklyn were tested for the virus in the two weeks between April 9 and April 23**. *Compare id. with* Exhibit A at ¶ 26. Judge Talwani noted that in the short time between April 9 and May 1, the number of staff diagnosed with COVID-19 has tripled. *Soto*, 2020 WL 2104787, at *2. According to the record in that case, and in the instant case, prisoners at MDC Brooklyn are housed in two-person cells or in large dormitories with up to 70 prisoners in three-tiered bunks three to five feet from each other. *Id.* In addition, MDC Brooklyn lacks a separate medical unit for ill inmates. *Id.* Therefore, Judge Talwani found that "the risk faced by Defendant is heightened by his incarceration in New York City and by the specific conditions in MDC Brooklyn." *Id.*

Judge Talwani further found that "hypertension increases the risk for serious complications from contracting COVID-19, including death." *Id.* (citing *Scparta*, 2020 WL 1910481, at *9). She noted that "[h]ypertension is a condition that substantially diminishes [the defendant's] ability to provide self-care in the prison environment as the condition lowers his immune response to effectively fight the coronavirus." *Id.* The Court determined that "COVID-19 is an extraordinary and compelling factor which may be considered, alongside other factors, when determining whether home confinement is merited for certain prisoners." *Id.* at *13.

Consistent with Judge Talwani's ruling in *Soto*, the Court should find that Mr.

Murakami's underlying medical conditions put him at an increased risk of death from COVID-19 and that extraordinary and compelling reasons exist to release Mr. Murakami to serve the remainder of his sentence in home confinement.

## CONCLUSION

For the foregoing reasons, and the reasons outlined in Mr. Murakami's motion, the Court should hold an emergency hearing on Mr. Murakami's motion and grant his motion for compassionate release.

Dated: May 4, 2020

Respectfully submitted,

YASUNA MURAKAMI

By his attorneys,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO # 669810)
Megan A. Siddall (BBO # 568979)
MINER ORKAND SIDDALL LLP
470 Atlantic Avenue, 4th Floor
Boston, Massachusetts 02210
Tel: (617) 273-8421
Fax: (617) 273-8004
sorkand@mosllp.com
msiddall@mosllp.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and accurate copy of the foregoing by ECF upon all counsel of record on May 4, 2020.

*/s/ Seth B. Orkand*
Seth B. Orkand